## PETER JOHNSON *v.* WOOD GIBSON.

Where a minor son, over twenty years of age, having been a clerk for a house in New York, and receiving his own wages, but residing in his father's family, went to California against the wishes, but with the consent of his father, who advanced the expenses of his passage, but neither received his earnings nor provided for his support abroad ; it was *held,* that the father was not liable for necessary attentions furnished to the son during a dangerous illness.

Where, however, the father does not emancipate his minor son, but retains control over him, the father will be liable for necessaries furnished to the son under circumstances preventing a previous application to the parent.

THE complaint was filed by the plaintiff, as the assignee of the claim of one Edward Mix, for services performed, during a period of 23 days, for an infant son of the defendant, while the latter was seriously ill at Sacramento, in California.

To the period of leaving New York, the son resided in his father's family, but was employed as a clerk with a mercantile firm, and retained his salary to his own use. The defendant testified that he had not refused to support the son ; that he went abroad against the defendant's inclination, but that the latter advanced to him the money to pay the passage to San Francisco ; that he did not, however, furnish any means of support after the son left home, and it did not appear that earnings realized abroad (if any) had been remitted to the father. The son was a minor, but upwards of 20 years of age.

The assignor testified, in substance, that the illness was dangerous, and accompanied with protracted mental insensibility ; that the attentions were continued day and night, when no one could be found to render the service ; that the witness was requested to attend him by a firm, Bailey, Morrison & Co., who had the charge of the young man, and who, upon his recovery, paid the witness a small sum, and endorsed the minor's note for the balance of the amount demanded by the witness for his compensation. The note was afterwards

presented to the defendant, who refused payment thereof. The claim was then assigned to the plaintiff, and he sought to recover the value of the services in this suit. The Marine Court rendered judgment against the plaintiff. The case was brought by appeal to this court.

*Addison S. Diossy* and *John Townshend,* for the plaintiff.

*Paris G. Clark,* for the defendant.

BY THE COURT. INGRAHAM, FIRST J.—The son of the plaintiff, being under the age of twenty-one years, left his father's home for California, and while there was taken sick. He was attended during his sickness, which was a dangerous one, by Edward Mix, who took care of him; and the plaintiff, as assignee of Mix, now claims from the father the value of such service.

The usefulness and necessity of the service are not denied, and the only question in the case is, whether the father, under the circumstances, is liable for the services thus rendered to the son.

It is not necessary, in this case, to say whether such liability would exist in a case where the son left his father's home without his consent, or ran away from his home, as was the case in *Angel* v. *McLellan,* 16 Mass. R. 28. Whatever may have been the father's inclination as to the son's leaving for California, no other conclusion can be formed than that the son left his home with his father's consent, because he himself says that he advanced him money to pay his passage to San Francisco, and that he furnished no means of support to him while there.

Kent says, it is always a question for the jury, whether, under the circumstances, a father's authority can be inferred. If the father suffers the child to remain abroad with the mother, he is liable for his necessaries. (2 Kent's Com. 3d ed. 265; 3 Day's Rep. 37.) Or, if he force the child from his home, the same rule applies. Where a child leaves his home without the parent's consent, there no refusal to provide for

the child at home has occurred, and consequently no liability on the part of the parent can be inferred.

But, in the present case, I think a different state of affairs existed. The child was from home with his parent's consent. Whether the father had any right to his earnings or not, does not clearly appear; and, in the absence of any proof to the contrary, the law presumes that the right of the parent thereto still continued. Under such circumstances, the medical aid or other assistance, rendered at a time when a previous application could not be made to the parent, would entitle the party rendering the same to compensation from the parent. Such was stated as the rule in *Dunbar* v. *Williams,* 10 J. R. 249.

It may be that the father, when his son left for California, intended to free him from control and permit him to receive his earnings to himself. If this were so, then the principle of the rule fails, and having no right to his earnings, and being no longer required to provide for his support, he would not be liable to pay for necessaries furnished to him. The cases showing that a parent may thus emancipate a child from his control are numerous. (*McCoy* v. *Hoffman,* 8 Cow. 85; *Burlingame* v. *Burlingame,* 7 id. 92; *Shute* v. *Dorr,* 5 Wend. 206; *Conover* v. *Cooper,* 3 Barb. S. C. R. p. 115.) And, in *Raymon* v. *Loyl,* 10 Barb. S. C. R. 483, this rule is not only sanctioned, but the rule that a stranger may recover for necessaries furnished to a child, when there is a clear and palpable omission of duty on the part of the parent to supply them, is limited to cases where the facts will warrant the finding of an express or implied contract on the part of the parent so to do. I think, in this case, there is evidence sufficient to warrant the conclusion, that the father had thus released his son from any claim he had upon him for his services. The son was over twenty years of age. Before he left his home, although living in his father's family, he had been a clerk for a house in this city, and received his own wages. The father advanced him money to pay his passage, but neither received his earnings nor provided for his

support abroad.   These facts are enough to warrant the finding, that the son left with the understanding that he was to labor for himself, and, as he had done before, appropriate the avails of his labor to his own use.

Where such is the case, there is no refusal to provide for the son, and no obligation to pay for necessaries furnished to him by strangers.   For such necessaries the son himself would be liable, not upon the note which he gave, but upon the original consideration, to which the defence of infancy could not be made.

It may appear hard to the plaintiff, under the circumstances which led to the rendition of the services for which this action is brought, that he should be refused payment by the parent.   However strong may be the moral obligation to compensate a stranger for services rendered to a son, under such sufferings as are detailed in the testimony, still, I· think no legal claim to recover against the father exists, and the court below was right in rendering judgment for the defendant.

Judgment for the defendant affirmed.