VALENTINE TIER, ADMINISTRATOR, &c., OF HARRY L. TIER, DECEASED, DEFENDANT IN ERROR, v. FREDERICK A. MILLER, PLAINTIFF IN ERROR.

Submitted July 8, 1910—Decided April 5, 1911.

1. Where the driver of a team of horses was allowed to carry a whip while driving the team, a presumption arises that he was allowed to carry it in the prosecution of his employment; and where, with the knowledge that a boy was upon the wagon, he suddenly started the horses violently forward with a stroke of the whip, causing the boy to be thrown and killed, the doctrine of *respondeat superior* applies in the absence of testimony tending to show the wantonness of the driver's act, or that it was not performed within the scope of his employment, and the question thus became one of fact for the jury.

2. Where the fact was in evidence that the driver was allowed by the master to carry the whip, or where it was carried by him without objection by the master, it was immaterial to inquire whether the master allowed him to use it on the horses, if in fact he did so use it in the prosecution of the master's business, and this inquiry presented a jury question.

On writ of error to the Passaic Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the defendant in error, *Ward & McGinnis.*

For the plaintiff in error, *Wilbur Van Houten.*

The opinion of the court was delivered by

MINTURN, J. The deceased was a boy about ten years of age who, with other boys, jumped on the reach of the defendant's truck without an invitation so to do, and, falling under the wheels, was killed. The truck and team were under the control of the defendant's driver, and the truck consisted of a long wagon, without a body, but which was held together by a long pole or reach, which extended a length of thirty-five

feet. The deceased sat upon this reach, at a distance of about twenty-five feet from the driver, and between the front and rear wheels. Upon observing the boys on the reach, the driver shouted to them to get off, and, without waiting for them to do so, struck the horses with his whip, causing them to start forward sharply, and causing the truck to lurch forward, as a result of which the deceased fell from the truck and the rear wheel ran over him, causing injuries which resulted in his death. The plaintiff, who is the father of the boy, brought this suit as his administrator to recover damages under the Death act. The trial resulted in a verdict for the plaintiff, and the defendant assigns error.

The declaration is predicated on two counts, alleging the defendant's liability upon two legal postulates—*first,* that the boy was upon the wagon "at the invitation and request, and with the permission and consent of the defendant;" and *secondly,* that the driver, "acting within the scope of the direction and authority of the said defendant," whipped the horses and caused them to "jump for the purpose of throwing" the deceased.

There was no testimony adduced in support of the first count and the trial court, with the consent of plaintiff's attorney, limited liability to proof under the second count.

It might have been urged under the second count, that since liability was predicated upon a willful and malicious act of the defendant's servant, that under the settled doctrine in this state, and quite generally accepted elsewhere, no liability was thereby imposed upon the master. *Holler* v. *Ross,* 39 *Vroom* 324; *Brokaw* v. *N. J. R. Trans. Co.,* 3 *Id.* 328; *Rounds* v. *D., L. & W. R. R.,* 64 *N. Y.* 129; *Wright* v. *Wilcox,* 19 *Wend.* 303.

But the case was tried upon the theory that the act of the driver in whipping up his horses was an act performed in furtherance of his duty as an employe of the defendant, for the proximate results of which, upon the doctrine of *respondeat superior,* the defendant became answerable in damages. The parties having elected to proceed upon the conceded liability

of the defendant based upon that theory of the law, the sole issue presented was one of fact for the jury to determine, whether or not the act of tort feasance complained of was an act performed in furtherance of the duty of the servant to the master. *Hinners* v. *Edgewater, &c., R. R.,* 46 *Vroom* 514.

Upon this conception of the case the defendant was asked:

"*Q.* Did he ever use a whip on that team?

"*A.* No, sir; he was not allowed to use a whip on that team.

"*Q.* Did you allow him to use a whip?

"*A.* No, sir."

This testimony, on motion of the plaintiff, was struck out by the trial court, and to that ruling an exception was taken, which presents the test upon the question of defendant's liability, for otherwise the essential facts are not in issue.

The testimony is undisputed that the driver had a whip in his possession, and common knowledge would suggest that such a utensil is part of the *modus operandi* for the propulsion of horses at the desired speed. If he was allowed to carry a whip, we must assume that he was carrying it in the prosecution of the master's business, for the proper manipulation of the team, and the question therefore necessarily arises, Did he on this occasion use it in the prosecution of the business of the master or upon a task entirely *ab extra* thereto?

The defendant's liability upon this conception of the law has been discussed in several cases in this state.

In *Bittle* v. *Camden and Amboy R. R.,* 26 *Vroom* 615, where the engineer of the defendant company, perceiving the plaintiff in an effort to control a restless horse at a railway station, blew a prolonged and apparently unnecessary blast upon his whistle, which resulted in frightening the horse and causing damage, his negligence in that respect was held to impose liability upon the company.

So, where the inquiry was whether the servant, who was a watchman, used excessive or inappropriate force in ejecting a conceded trespasser. *Letts* v. *Hoboken Railroad Co.,* 41 *Vroom* 358; *Carey* v. *Hamburg Am. Packet Co.,* 43 *Id.* 56.

The most recent controlling authority in this state upon this doctrine is *Rhinesmith* v. *Erie R. R.*, 47 *Vroom* 783, where the plaintiff was struck by a flying missile from an exploded torpedo set by defendant's employe upon the track in disobedience of an express rule of the company prohibiting the setting of torpedoes in close proximity to the passenger stations. The Court of Errors held that in the absence of testimony tending to show wantonness in the servant's act or that it was not performed in furtherance of his duty to the master, the doctrine of *respondeat superior* applied and imposed liability.

Since there is in this case an entire absence of testimony indicative of a wanton intent upon the part of the servant in whipping up the horses, and since the case was tried and submitted to the jury upon the other alternative involving only the question of the prosecution of the master's business, the testimony excluded was clearly immaterial.

The judgment will therefore be affirmed.