[No. 16739. Department Two. December 9, 1921.]

## ESTHER SWANSON, *Respondent*, v. PUGET SOUND ELECTRIC RAILWAY, *Appellant.*[1]

RAILROADS (61, 71)—ACCIDENT AT CROSSING—NEGLIGENCE—FAILURE TO SIGNAL—EVIDENCE—SUFFICIENCY. In an action for the death of one driving an automobile across the track of an electric railway, the negligence of the defendant was a question for the jury where the evidence showed the train approached the crossing at a speed of fifty-five miles an hour; that it sounded no whistle; that the automatic electric signal failed to ring or show a red light; that no watchman was kept at the crossing; and that the view in the direction of the approaching train was obscured by a shelter house of defendant and a large pole and sign.

SAME (64, 71)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of one killed by an interurban railway train at a village crossing was for the jury where the evidence showed that the deceased brought his automobile to a standstill within five to eight feet of the track, then started up and was struck while crossing the track by the train running at a speed of fifty-five miles per hour; that the headlight of the train could have been seen for a distance of from 2,000 to 3,000 feet; that in the absence of any crossing signal the deceased might have assumed the headlight as that on the train of another railway; and that from his position a view of the approaching train was obscured by intervening obstructions.

DEATH (37)—DAMAGES—EXCESSIVE VERDICT. A verdict for $12,-000 for negligently causing the death of a man thirty-nine years of age, having a wife but no children, cannot be said to be excessive, where he was capable of earning $300 per month during the war period.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 14, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*James B. Howe* and *Hugh A. Tait,* for appellant.

*Fred H. Lysons, L. B. Schwellenbach,* and *Christopher Jacobsen,* for respondent.

[1]Reported in 202 Pac. 264.

MACKINTOSH, J.—On the dark and cloudy evening of January 14, 1920, Ludvig Swanson was killed by a train running on the appellant's interurban line of railway, at a point where it crosses the public highway at grade, in the little town of Orillia, King county. This action is brought by the widow, as administratrix, to recover damages.

Swanson had lived in the neighborhood of this crossing for some time, and had been in the habit of crossing the appellant's tracks in his automobile twice daily. At the time in question, he was traveling in a Ford car on the highway in an easterly direction, and the interurban train which struck him was going in a southerly direction. The railroad tracks extend north from the crossing in very nearly a straight line for many hundred feet. Parallel to the appellant's tracks, a distance about eighty-three feet easterly, are the tracks of the Chicago, Milwaukee & St. Paul Railway, over which electric trains are operated, and easterly from the Milwaukee line, one hundred and ten and a half feet, lie the parallel tracks of the Northern Pacific railroad. As one approaches the crossing from the west, on his left (that is, the north), in the town of Orillia, there is situated a two-story building, used as a blacksmith's shop, the east wall of which is eighty-five and six-tenths feet west of the west rail of the appellant's tracks. An open space extends between this building to a shelter station of the appellant, the west wall of which is twenty-three feet west of the west rail of the appellant's tracks, so that, in other words, there was an open space of sixty-two and six-tenths feet where an unobstructed view could be had of trains approaching from the north. From the point where the west wall of the shelter station, which is approximately eighty-six feet north of the center of the highway, obstructed the view

to the track, the view of trains southbound was interfered with by the station and by poles and other obstructions, except for a short space. On the south side of the roadway and near the track was a danger signal, placed on a pole, consisting of a swinging arm, bell and red light, which was supposed to be put into operation by a mechanism on the appellant's trains, at a point several hundred feet north of the crossing. To the north of the highway and near the shelter station was a pole, some twelve or fifteen feet high, upon which was a cluster of electric lights. This will give an adequate picture of the situation.

It is claimed that the appellant was guilty of negligence in the following particulars: That it drove the train at an excessive rate of speed; that the shelter station had been placed so close to the tracks as to obstruct the view to the north; that the automatic electric signal was out of order and failed to ring or show a red light; that no watchman or signalman was kept at the crossing, and that a large pole and sign had been placed in such a position as to obstruct the view to the north. The case was tried to a jury, which returned a verdict in favor of the respondent, and the appellant raises, aside from the question as to the amount of the verdict, but one proposition, and that is that the evidence is insufficient, as a matter of law, to show any negligence on the part of the appellant, and that the evidence affirmatively shows, as a matter of law, the contributory negligence of the deceased.

A consideration of the sufficiency of the evidence to show appellant's negligence must be approached with the idea of determining whether there was any evidence from which the jury would be justified in determining negligence. The testimony in the case, as showing respondent's negligence, may be fairly stated as follows:

That Swanson was driving his automobile at a moderate rate of speed, and that, after passing the blacksmith's shop, he brought the automobile to a standstill somewhere from five to eight feet from the track, and that the automobile remained stationary a considerable number of seconds; that he then started up and was hit by the train as he was on the tracks; that the train was being operated at a speed of at least fifty-five miles an hour; and that this speed was not slackened before the impact. The testimony further, although contradicted, would indicate that no crossing signal was given; and, without much contradiction, it appears that the light in the automatic signal was not burning; and, although contradicted, there was evidence that the signal arm and bell thereon were not operating. The testimony indicates that the headlights of the approaching train were burning, and that they could be seen for a distance of some 2,000 or 3,000 feet in advance of the train. There was also some testimony that this light might become blended with the headlights of an automobile approaching at right angles, and also with the light emitted from the cluster lamps near the track north of the highway. It cannot be said, as a matter of law, that these facts do not show negligence on the appellant's part. The jury was warranted in concluding from the evidence that the warning lights and bells on the automatic signal were not working; that the view was obstructed by the shelter station; that the approach of the train had not been heralded by a whistle, the establishment of any of which facts, to its satisfaction, would warrant the jury's determination of appellant's negligence.

Passing to the question of whether the evidence establishes, as a matter of law, Swanson's contributing negligence, the argument in favor of such a conclusion

is grounded on the fact that, after he passed the east wall of the blacksmith's shop, he must have perceived the train's approach. Not necessarily so. Although the train at that time may have come within his line of vision, he might, though reasonably careful, have supposed the oncoming light to be that of a Milwaukee railroad train. Further, it could be that, still reasonably careful, he might have recognized the interurban train as such, but have misjudged its rate of speed. More than that, this court cannot say, for it cannot find that the deceased contributed to the accident, as a matter of law, where the evidence discloses, without contradiction (in fact, it is testified to by appellant's own motorman), that the deceased approached the track in a careful manner; that he stopped; that he used some degree of care, at least, in protecting himself against possible injury. Whether that care was that which a reasonable man would have taken under all the circumstances is for the jury to say, and not for this court. More especially is this true by reason of the fact that, at the point where he stopped, he was in close proximity to the automatic signal device, which, according to the testimony in the case, failed to operate, which fact would add confirmation to a belief that it was safe to proceed.

We cannot say, as a matter of law, that, having taken some precaution for his safety, and that, having relied on a signal device which, from his experience, he knew was set in motion by a train far distant north of the crossing, and, if responsive to the train, would have allowed him sufficient time to cross appellant's tracks safely, and which for some reason did not so respond, deceased was contributorily negligent in attempting the crossing. Reasonable minds might well differ in judging decedent's conduct, a fact which precludes our

determining the question as a matter of law.    The circumstance that the headlights were visible for a great distance cannot be conclusive against the decedent, for, although he may have seen them as he traversed the open space between the blacksmith's shop and the shelter station, they may have indicated, as we have said, a train approaching on other than appellant's tracks; and, as before noted, when he had stopped, the headlights of appellant's train, the lights from the cluster lamps, and those of his automobile might have become so mingled that a prudent man might reasonably have proceeded.

We are satisfied from a rather careful reading of the statement of facts that there was sufficient evidence of appellant's negligence, and from that reading we can infer no conduct of deceased inconsistent with the acts of a reasonably prudent and careful person in the same situation.

In conclusion, it is urged that the verdict is excessive.    The deceased was a man about thirty-nine years of age, who, during the war, had earned $300 a month in the shipyards; survived by a wife but no children, and while the verdict of $12,000 seems adequate there is nothing which would prompt us to hold that it is excessive.

Judgment affirmed.

PARKER, C. J., MAIN, HOLCOMB, and HOVEY, JJ., concur.